**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**Charleston Division**

| | |
|---|---|
| SOUTH CAROLINA COASTAL CONSERVATION LEAGUE, CHARLESTON WATERKEEPER, AMERICAN RIVERS, CHATTAHOOCHEE RIVERKEEPER, CLEAN WATER ACTION, DEFENDERS OF WILDLIFE, FRIENDS OF THE RAPPAHANNOCK, NATIONAL WILDLIFE FEDERATION, NATURAL RESOURCES DEFENSE COUNCIL, NORTH CAROLINA COASTAL FEDERATION, and NORTH CAROLINA WILDLIFE FEDERATION, <br><br> Plaintiffs, <br><br> v. <br><br> ANDREW R. WHEELER, in his official capacity as Administrator of the U.S. Environmental Protection Agency, U.S. ENVIRONMENTAL PROTECTION AGENCY, RICKY D. JAMES, in his official capacity as Assistant Secretary of the Army (Civil Works), and U.S. ARMY CORPS OF ENGINEERS, <br><br> Defendants. | Case No. 2:19-cv-03006-DCN |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

A. LANCE CRICK
 *Acting United States Attorney*
 District of South Carolina

LEE E. BERLINSKY (Fed. ID# 05443)
 *Assistant United States Attorney*
 Liberty Center Building
 151 Meeting Street, Suite 200
 Charleston, SC 29402
 (843) 266-1679
 Lee.Berlinsky@usdoj.gov

## TABLE OF CONTENTS

TABLE OF CONTENTS ......................................................................................................... i

TABLE OF AUTHORITIES ................................................................................................ iii

INTRODUCTION AND NATURE OF THE CASE ................................................................ 1

STATEMENT OF THE FACTS ............................................................................................. 3

        A.    Pre-2015 Regulatory Definition of "Waters of the United States" ............. 3

        B.    The 2015 Rule .................................................................................................. 4

        C.    Agencies' Reconsideration and Rulemaking Since the 2015 Rule ............. 6

                1.    The Applicability Rule .................................................................... 7

                2.    The 2019 Rule ................................................................................. 7

                3.    Additional Rulemaking on a Replacement Definition .................. 9

        D.    Procedural History ......................................................................................... 9

STANDARD OF REVIEW ................................................................................................. 10

ARGUMENT ...................................................................................................................... 11

    I.    Plaintiffs Lack Standing to Challenge the 2019 Rule ......................................... 11

        A.    Plaintiffs Lack Representational Standing .............................................. 11

                1.    Injury in Fact ................................................................................. 12

                2.    Redressability ................................................................................. 14

        B.    Plaintiffs Lack Organizational Standing ................................................. 17

                1.    Injury in Fact ................................................................................. 17

                2.    Redressability ................................................................................. 19

    II.    This Case Is Not Ripe ........................................................................................... 19

III.     In the Alternative, the Case Should Be Held in Abeyance .................................... 22

CONCLUSION ...................................................................................................................... 23

# TABLE OF AUTHORITIES

**Cases**

*Am. Petroleum Inst. v. EPA*,
   683 F.3d 382 (D.C. Cir. 2012) ............................................................. 23

*Arbaugh v. Y & H Corp.*,
   546 U.S. 500 (2006) .......................................................................... 10

*Ass'n for Retarded Citizens v. Dallas Cty. Mental Health & Mental*
  *Retardation Ctr. Bd. of Trs.*,
   19 F.3d 241 (5th Cir. 1994) ............................................................... 18

*Clapper v. Amnesty Int'l USA*,
   133 S. Ct. 1138 (2013) .......................................................... 11, 12, 14

*Crickon v. Thomas*,
   579 F3d 978 (9th Cir. 2009) .............................................................. 15

*Demetres v E.W. Constr., Inc.*,
   776 F.3d 271 (4th Cir. 2015) ............................................................. 11

*Doe v. Va. Dep't of State Police*,
   713 F.3d 745 (4th Cir. 2013) ....................................................... 14, 20

*Friends of Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
   528 U.S. 167 (2000) .......................................................................... 12

*Georgia v. Pruitt*,
   326 F. Supp. 3d 1356 (S.D. Ga. 2018) ................................................ 5

*Georgia v. Wheeler*,
   No. 2:15-cv-00079, 2019 WL 3949922 (S.D. Ga. Aug. 21, 2019) ...................... 6, 15

*In re EPA & Dep't of Def. Final Rule*,
   803 F.3d 804 (6th Cir. 2015), *vacated*, 713 F. App'x 489 (6th Cir. 2018) ................ 4

*In re U.S. Dep't of Def. & EPA Final Rule: Clean Water Rule:*
  *Definition of "Waters of the United States"*,
   817 F.3d 261 (6th Cir. 2016) ............................................................... 5

*In re U.S. Dep't of Def. & EPA Final Rule: Clean Water Rule:*
  *Definition of "Waters of the United States"*,
   713 F. App'x 489 (6th Cir. 2018) ........................................................ 5

*Lansdowne on the Potomac Homeowners Ass'n v. Open Band at Lansdowne, LLC,*
   713 F.3d 187 (4th Cir. 2013) ................................................................................ 21

*Lujan v. Defenders of Wildlife,*
   504 U.S. 555 (1992) ............................................................................................ 11

*Middlesex Cty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n,*
   453 U.S. 1 (1981) .................................................................................................. 3

*Miller v. Brown,*
   462 F.3d 312 (4th Cir. 2006) .............................................................................. 11

*Monsanto Co. v. Geertson Seed Farms,*
   561 U.S. 139 (2010) ............................................................................................ 16

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,*
   463 U.S. 29 (1983) .............................................................................................. 15

*Nat'l Ass'n of Home Builders v. EPA,*
   667 F.3d 6 (D.C. Cir. 2011) ............................................................................... 18

*Nat'l Ass'n of Mfrs. v. Dep't of Def.,*
   138 S. Ct. 617 (2018) .................................................................................... 5, 20

*Nat'l Park Hosp. Ass'n v. Dep't of Interior,*
   538 U.S. 803 (2003) ............................................................................................ 20

*Nat'l Taxpayers Union, Inc. v. United States,*
   68 F.3d 1428 (D.C. Cir. 1995) ........................................................................... 17

*North Dakota v. EPA,*
   127 F. Supp. 3d 1047 (D.N.D. 2015) ............................................................ 5, 16

*Ohio Forestry Ass'n v. Sierra Club,*
   523 U.S. 726 (1998) ..................................................................................... 20, 21

*Ohio v. EPA,*
   No. 2:15-cv-2467, 2019 WL 1368850 (S.D. Ohio Mar. 26, 2019) ...................... 5

*Oklahoma ex rel. Hunter v. EPA,*
   Nos. 15-cv-0381 & 15-cv-0386, 2019 WL 2288446 (N.D. Okla. May 29, 2019) .................... 5

*Paulsen v. Daniels,*
   413 F.3d 999 (9th Cir. 2005) .............................................................................. 15

*Pinkley, Inc. v. City of Frederick*,
  191 F.3d 394 (4th Cir. 1999) ........................................................... 10

*Puget Soundkeeper Alliance v. Wheeler*,
  No. C15-1342-JCC, 2019 WL 6310562 (W.D. Wash. Nov. 25, 2019) ...................... 14, 18, 19

*Rapanos v. United States*,
  547 U.S. 715 (2006) ...................................................................... 4

*Sansotta v. Town of Nags Head*,
  724 F.3d 533 (4th Cir. 2013) ........................................................... 20

*Scoggins v. Lee's Crossing Homeowners Ass'n*,
  718 F.3d 262 (4th Cir. 2013) ........................................................... 20

*Small Refiner Lead Phase-Down Task Force v. EPA*,
  705 F.2d 506 (D.C. Cir. 1983) .......................................................... 15

*Solid Waste Agency of N. Cook Cty. v. U.S. Army Corps of Eng'rs*,
  531 U.S. 159 (2001) ...................................................................... 4

*Spokeo, Inc. v. Robins*,
  136 S. Ct. 1540 (2016) ........................................................ 11, 12, 18

*Summers v. Earth Island Inst.*,
  555 U.S. 488 (2009) ..................................................................... 19

*Texas v. EPA*,
  389 F. Supp. 3d 497 (S.D. Tex. 2019) ............................................... 6, 16

*Texas v. EPA*,
  No. 3:15-cv-00162, 2018 WL 4518230 (S.D. Tex. Sept. 12, 2018) ...................... 5, 16

*U.S. Army Corps of Eng'rs v. Hawkes Co., Inc.*,
  136 S. Ct. 1807 (2016) .................................................................. 21

*United States v. Riverside Bayview Homes, Inc.*,
  474 U.S. 121 (1985) ...................................................................... 3

*Wash. Cattlemen's Ass'n v. EPA*,
  No. C19-0569-JCC, 2019 WL 7290590 (W.D. Wash. Dec. 30, 2019) ....................... 5

*Wyoming v. Zinke*,
  871 F.3d 1133 (10th Cir. 2017) ......................................................... 22

**Rules**

Federal Rule of Civil Procedure 12(b)(1) ...................................................................... 10

**Statutes**

33 U.S.C. §§ 1251-1388 ...................................................................................... 1, 3

33 U.S.C. § 1251(a) .................................................................................................. 3

33 U.S.C. § 1251(b) ............................................................................................... 3, 8

33 U.S.C. § 1311(a) .................................................................................................. 3

33 U.S.C. § 1342 ...................................................................................................... 3

33 U.S.C. § 1344 ...................................................................................................... 3

33 U.S.C. § 1362(7) .................................................................................................. 3

33 U.S.C. § 1362(12) ................................................................................................ 3

33 U.S.C. § 1369(b)(1) ........................................................................................... 4, 5

**Code of Federal Regulations**

33 C.F.R. § 328.3(a) (1987) ...................................................................................... 3

40 C.F.R. § 232.2(q) (1988) ...................................................................................... 3

**Federal Registers**

42 Fed. Reg. 37,122 (July 19, 1977) ........................................................................ 3, 8

80 Fed. Reg. 37,054 (June 29, 2015) ......................................................... 4, 13, 18, 19

82 Fed. Reg. 12,497 (Feb. 28, 2017) ........................................................................... 7

82 Fed. Reg. 34,899 (July 27, 2017) ........................................................................... 7

82 Fed. Reg. 55,542 (Nov. 22, 2017) .......................................................................... 7

83 Fed. Reg. 5200 (Feb. 6, 2018) ........................................................................... 5, 7

83 Fed. Reg. 32,227 (July 12, 2018) ........................................................................... 8

84 Fed. Reg. 4154 (Feb. 14, 2019) ............................................................................. 9

84 Fed. Reg. 56,626 (Oct. 22, 2019)............................................................ 1, 8, 9, 13, 19

## INTRODUCTION AND NATURE OF THE CASE

This case concerns the scope of federal regulatory jurisdiction over the nation's waters under the Clean Water Act, 33 U.S.C. §§ 1251-1388, specifically the definition of "waters of the United States" as used in that statute.  In 2019, following an extensive notice-and-comment rulemaking, the United States Environmental Protection Agency and United States Department of the Army (the "Agencies") concluded that a 2015 rule defining "waters of the United States" exceeded their authority under the Clean Water Act and applicable Supreme Court precedent. The 2015 rule was highly controversial, and challenged by both commercial and environmental organizations.  Commercial interests claimed the rule categorically asserted jurisdiction over lands the text of the statute did not reach.  Environmental interests claimed the rule categorically exempted waters that such a rule must reach.  The 2015 rule was preliminarily enjoined by several district courts.  Two district courts subsequently granted summary judgment on claims that the 2015 rule was substantively and/or procedurally unlawful and remanded the rule to the Agencies.

The Agencies then finalized a rule to rescind the 2015 rule.  They reinstated the pre-2015 regulatory definition pending a substantive rulemaking on a revised definition of "waters of the United States."  Definition of "Waters of the United States"—Recodification of Pre-Existing Rules, 84 Fed. Reg. 56,626 (Oct. 22, 2019) (the "2019 Rule").  A replacement rule defining "waters of the United States" is expected to be issued in January 2020.

Plaintiffs, eleven environmental and community organizations, seek judicial review of the 2019 Rule under the Administrative Procedure Act ("APA").  They claim that the rule was substantively and procedurally deficient and ask the Court to vacate the rule.  Plaintiffs' claims must be dismissed for lack of subject matter jurisdiction.

1

Plaintiffs lack both organizational and representational standing to challenge the 2019 Rule for two reasons.  First, Plaintiffs have failed to identify any injury in fact.  The harms they allege, such as loss of recreational, commercial, and consumptive uses of waters, are speculative—not imminent or concrete.  Specifically, they have not pointed to specific, actual waters that were allegedly protected under the 2015 rule and that will no longer be protected under the reinstated pre-2015 regulatory definition.  They also have not pointed to any planned or even proposed discharges of pollutants into those unidentified waters that would result in the feared harms.  Second, Plaintiffs have failed to explain how vacatur of the 2019 Rule—their sole requested remedy—would redress their alleged injuries.  Specifically, they claim that waters in which they have an interest are no longer protected, but point to no relief the Court can grant that would result in the desired protection.

This case should also be dismissed as unripe for judicial review.  Plaintiffs' challenge to the 2019 Rule was brought too early because they have not identified any concrete action threatening their interest in specific waters.  Moreover, because a rulemaking is underway that could supersede the need to address the 2019 Rule being challenged, the Court should defer review until the new action is completed.  Accordingly, this case should be dismissed for lack of subject matter jurisdiction.

In the alternative, if the Court does not dismiss the case now, because the Agencies anticipate that a rule replacing the 2019 Rule will be finalized later this month, the case should be stayed pending completion of the rulemaking process on the revised definition of "waters of the United States."

## STATEMENT OF THE FACTS

**A.    Pre-2015 Regulatory Definition of "Waters of the United States"**

Congress enacted the Clean Water Act (CWA or Act), 33 U.S.C. §§ 1251-1388, to afford

federal protection for the Nation's waters, *id*. § 1251(a), while declaring its policy to "recognize,

preserve, and protect the primary responsibilities and rights of States to prevent, reduce, and

eliminate pollution," *id*. § 1251(b).  Central to the Act is its general prohibition against "the

discharge of any pollutant by any person," *id.* § 1311(a), unless the discharger "obtain[s] a

permit and compl[ies] with its terms," *Middlesex Cty. Sewerage Auth. v. Nat'l Sea Clammers*

*Ass'n*, 453 U.S. 1, 11 (1981) (citation omitted); *see also* 33 U.S.C. §§ 1342, 1344 (establishing

permitting programs).  There is a "discharge of a pollutant" when a person adds "any pollutant to

navigable waters from any point source."  33 U.S.C. § 1362(12).  "[N]avigable waters," in turn,

are "the waters of the United States."  *Id*. § 1362(7).

EPA and the Corps are jointly charged with implementing the Clean Water Act.  These

Agencies "must necessarily choose some point at which water ends and land begins," but

"[w]here on this continuum to find the limit of 'waters' is far from obvious."  *United States v.*

*Riverside Bayview Homes, Inc.*, 474 U.S. 121, 132 (1985).  The Corps first promulgated

regulations defining "waters of the United States" in the 1970s.  *See, e.g.*, 42 Fed. Reg. 37,122,

37,144 (July 19, 1977).  In the late 1980s, the Agencies adopted regulatory definitions of that

statutory phrase substantially similar to the 1977 definition.  At that time, such waters included:

> All waters which are currently used, or were used in the past, or may be
> susceptible to use in interstate or foreign commerce . . . ; All interstate waters
> including interstate wetlands; . . . . Tributaries of waters identified in paragraphs
> (a)(1) through (4) of this section; The territorial seas; [and] Wetlands adjacent to
> waters (other than waters that are themselves wetlands) identified in paragraphs
> (a)(1) through (6) of this section.

33 C.F.R. § 328.3(a) (1987); *see also* 40 C.F.R. § 232.2(q) (1988) (nearly identical text).

Over time, the Agencies refined their application of the regulatory definition of "waters of the United States," as informed by Supreme Court decisions such as *Rapanos v. United States*, 547 U.S. 715 (2006) and *Solid Waste Agency of Northern Cook County v. U.S. Army Corps of Engineers*, 531 U.S. 159 (2001).  Though "imperfect," this decades-old program provides a measure of certainty and predictability to those subject to the Clean Water Act.  *In re EPA & Dep't of Def. Final Rule*, 803 F.3d 804, 808 (6th Cir. 2015) (describing the "familiar" pre-2015 Rule regime), *vacated*, 713 F. App'x 489 (6th Cir. 2018).

**B.    The 2015 Rule**

In June 2015, the Agencies promulgated a rule revising the regulatory definition of "waters of the United States."  *See* 80 Fed. Reg. 37,054 (June 29, 2015) (the "2015 Rule").  The 2015 Rule generally placed waters into three categories:  (1) waters that are categorically "waters of the United States" in all instances (i.e., without the need for additional analysis); (2) waters that are subject to case-specific analysis to determine whether they are "waters of the United States"; and (3) waters that are categorically excluded from being "waters of the United States." *Id*. at 37,057.

Numerous interested persons sought judicial review of the 2015 Rule, both in district courts and directly in courts of appeals, shortly after its promulgation.  Both commercial and environmental interests challenge the rule—both seeking vacatur and reform of differing aspects of the rule.  The challenges filed in the courts of appeals were filed pursuant to 33 U.S.C. § 1369(b)(1), and they were consolidated in the Sixth Circuit.  In October 2015, that court granted a motion for a nationwide stay of the 2015 Rule.  *In re EPA*, 803 F.3d at 808-09.  The Agencies then returned to their longstanding practice of applying, nationwide, the definition of "waters of

4

the United States" set forth in their 1980s regulations, as informed by guidance, agency practice, and relevant case law.  83 Fed. Reg. 5200, 5201 (Feb. 6, 2018).

In February 2016, the Sixth Circuit held that the courts of appeals, not district courts, had jurisdiction over the challenges to the 2015 Rule under 33 U.S.C. § 1369(b)(1).  *In re U.S. Dep't of Def. and EPA Final Rule: Clean Water Rule: Definition of "Waters of the United States*," 817 F.3d 261 (6th Cir. 2016).  In January 2018, however, the Supreme Court reversed the Sixth Circuit's jurisdictional determination, holding that any challenges to the 2015 Rule may only be filed in district courts pursuant to the APA.  *Nat'l Ass'n of Mfrs. v. Dep't of Def.*, 138 S. Ct. 617, 624 (2018).  The Sixth Circuit then relinquished jurisdiction and vacated its nationwide stay of the 2015 Rule in February 2018.  *In re U.S. Dep't of Def. and EPA Final Rule: Clean Water Rule: Definition of "Waters of the United States*," 713 F. App'x 489, 490 (6th Cir. 2018).

Four district courts granted preliminary injunctions against the 2015 Rule, covering 27 states including South Carolina.[1]  *Or. Cattlemen's Ass'n v. EPA*, No. 3:19-cv-564, Dkt. 58 (D. Or. July 26, 2019); *Texas v. EPA*, No. 3:15-cv-00162, 2018 WL 4518230 (S.D. Tex. Sept. 12, 2018); *Georgia v. Pruitt*, 326 F. Supp. 3d 1356 (S.D. Ga. 2018); *North Dakota v. EPA*, 127 F. Supp. 3d 1047 (D.N.D. 2015).  Two district courts have reached summary judgment decisions.  Both concluded that the 2015 Rule was unlawful.  First, in May 2019, the U.S. District Court for the Southern District of Texas remanded the 2015 Rule to the Agencies on the grounds that the rule violated the APA's notice and comment requirements because: (1) the 2015 Rule's

---

[1] A motion to clarify the scope of a preliminary injunction in a twenty-eighth state, New Mexico, remains pending in *North Dakota v. EPA*, 3:15-cv-59 (D.N.D.).  The State of Wisconsin was a plaintiff in *Georgia v. Wheeler* at the time that court granted the preliminary injunction but later withdrew.  Three courts denied motions for preliminary injunction.  *Wash. Cattlemen's Ass'n v. EPA*, No. C19-0569-JCC, 2019 WL 7290590, at *2 (W.D. Wash. Dec. 30, 2019); *Oklahoma ex. rel. Hunter v. EPA*, Nos. 15-cv-0381 & 15-cv-0386, 2019 WL 2288446, at *5 (N.D. Okla. May 29, 2019); *Ohio v. EPA*, No. 2:15-cv-2467, 2019 WL 1368850, at *1 (S.D. Ohio Mar. 26, 2019).

definition of "adjacent" waters (which relied on distance-based limitations) was not a "logical outgrowth" of the proposal's definition of "adjacent" waters (which relied on ecologic and hydrologic criteria); and (2) the Agencies denied interested parties an opportunity to comment on the final draft of a technical report that served as the technical basis for the final rule. *See Texas v. EPA*, 389 F. Supp. 3d 497, 504-06 (S.D. Tex. 2019).

In August 2019, the U.S. District Court for the Southern District of Georgia also remanded the 2015 Rule to the Agencies after concluding that the Rule suffered from numerous procedural and substantive deficiencies. *See Georgia v. Wheeler*, No. 2:15-cv-00079, 2019 WL 3949922 (S.D. Ga. Aug. 21, 2019). Among other things, the court found the 2015 Rule "unlawful" given its "significant intrusion on traditional state authority" without "any clear or manifest statement to authorize intrusion into that traditional state power." *Id.* at *23. The court also found that multiple provisions in the 2015 Rule were inconsistent with Justice Kennedy's significant nexus standard, including the Rule's "tributary" definition, which the court held extended federal CWA jurisdiction "well beyond what is allowed under Justice Kennedy's interpretation of the CWA," *id.* at *14, and the Rule's "adjacent" waters provision, which the court found "could include 'remote' waters . . . that have only a 'speculative or insubstantial' effect on the quality of navigable in fact waters." *Id.* at *17. And the court found several provisions in the 2015 Rule, including some distance-based limitations, were not sufficiently noticed in the proposal and were arbitrary and capricious in violation of the APA. *See id.* at 23-30.

## C.    Agencies' Reconsideration and Rulemaking Since the 2015 Rule

In early 2017, the President issued an Executive Order directing the Agencies to review the 2015 Rule and to publish for notice and comment a proposed rule rescinding or revising the

rule, as appropriate and consistent with law.  82 Fed. Reg. 12,497 (Feb. 28, 2017).  Since then,

the Agencies have engaged in rulemakings to carry out the Executive Order.

### 1.     The Applicability Rule

In November 2017, the Agencies proposed and solicited public comment on a rule that

would postpone the application of the 2015 Rule for two years to "ensure that there is sufficient

time for the regulatory process for reconsidering the definition of 'waters of the United States' to

be fully completed."  82 Fed. Reg. 55,542, 55,544 (Nov. 22, 2017).  The Agencies took final

action on that Applicability Rule on February 6, 2018.  83 Fed. Reg. 5200 (Feb. 6, 2018).  In that

final rule, the Agencies found that an applicability date of February 6, 2020, for the 2015 Rule

would serve the public interest by maintaining the pre-2015 regulatory framework for a time so

that only one regulatory definition of "waters of the United States" would be applicable

throughout the entire United States.  *See* 83 Fed. Reg. at 5202.

The Applicability Rule was challenged in separate actions in different district courts,

including this Court.  This Court and another court granted summary judgment in favor of the

plaintiffs in those cases and vacated or enjoined the Applicability Rule nationwide.  *S.C. Coastal

Conservation League v. Pruitt*, Case No. 2:18-cv-330 (D.S.C.), ECF Nos. 66 (Aug. 16, 2018) &

89 (Dec. 4, 2018); *Puget Soundkeeper All. v. McCarthy*, Case No. 2:15-cv-1342 (W.D. Wash.),

ECF No. 61 (Nov. 26, 2018).  No party pursued an appeal.

### 2.     The 2019 Rule

Consistent with the President's directive, in July 2017 the Agencies proposed to rescind

the 2015 Rule as the first step of a comprehensive, two-step rulemaking process to review and

revise the 2015 Rule.  82 Fed. Reg. 34,899 (July 27, 2017).  The Agencies sought additional

comment on the proposed rescission of the 2015 Rule through a supplemental notice of proposed

rulemaking.  83 Fed. Reg. 32,227 (July 12, 2018).  The public comment period closed in August 2018.  After conducting the notice-and-comment rulemaking process, and in response to the remand orders issued by the district courts in Texas and Georgia, the Agencies issued a final rule repealing the 2015 Rule and reinstating the pre-2015 Rule regulatory definition of "waters of the United States" on September 12, 2019.  84 Fed. Reg. 56,626 (Oct. 22, 2019).  The Agencies concluded that the 2015 Rule was unlawful and should be rescinded for four reasons.

*First*, the Agencies concluded that "the 2015 Rule did not implement the legal limits on the scope of the agencies' authority under the Clean Water Act (CWA) as intended by Congress and reflected in Supreme Court cases, including Justice Kennedy's articulation of the significant nexus test in *Rapanos*."  *Id*. at 56,626.

*Second*, the Agencies concluded that the 2015 Rule "failed to adequately consider and accord due weight to the policy of the Congress in CWA Section 101(b) to 'recognize, preserve, and protect the primary responsibilities and rights of States to prevent, reduce, and eliminate pollution' and 'to plan the development and use . . . of land and water resources.'"  *Id*. (quoting 33 U.S.C. § 1251(b)).

*Third*, the Agencies concluded that repeal of the 2015 Rule was necessary to "avoid interpretations of the CWA that push the envelope of their constitutional and statutory authority absent a clear statement from Congress authorizing the encroachment of federal jurisdiction over traditional State land-use planning authority."  *Id*. at 56,626.

*Fourth* and finally, the Agencies concluded that the "2015 Rule's distance-based limitations suffered from certain procedural errors and a lack of adequate record support."  *Id*.

The Agencies further concluded that it was appropriate to reinstate the pre-existing regulations.  The Agencies found that such reinstatement was warranted because (1) it would

provide regulatory certainty pending the Agencies separate rulemaking on a proposed revised definition of "waters of the United States"; and (2) because "as implemented, those regulations adhere more closely than the 2015 Rule to the jurisdictional limits reflected in the statute and case law." *Id*. at 56,661.

The 2019 Rule went into effect on December 23, 2019. 84 Fed. Reg. 56,626 (Oct. 22, 2019).

### 3.    Additional Rulemaking on a Replacement Definition

In December 2018, the Agencies signed a proposal to revise the definition of "waters of the United States," which was published in February 2019. 84 Fed. Reg. 4154 (Feb. 14, 2019). The proposed definition would replace the approach in the 2015 Rule and the pre-2015 regulations. Under the Agencies' proposal, traditional navigable waters, tributaries to those waters, certain ditches, certain lakes and ponds, impoundments of jurisdictional waters, and wetlands adjacent to jurisdictional waters would be federally regulated. The proposal also detailed certain features that are not "waters of the United States." The public comment period closed in April 2019.

On December 5, 2019, the Office of Management and Budget received a draft of a final rule entitled "Revised Definition of 'Waters of the United States' (Step 2)" for interagency review. *See* https://www.reginfo.gov/public/do/eAgendaViewRule?pubId=201910&RIN=2040-AF75 (last visited Jan. 16, 2020). The final rule is expected to be issued this month. *Id*.

### D.    Procedural History

On October 23, 2019, the South Carolina Coastal Conservation League, Charleston Waterkeeper, American Rivers, Chattahoochee Riverkeeper, Clean Water Action, Defenders of Wildlife, Friends of the Rappahannock, National Wildlife Federation, Natural Resources

Defense Council, North Carolina Coastal Federation, and North Carolina Wildlife Federation filed this lawsuit challenging the 2019 Rule.

Plaintiffs claim the 2019 Rule is arbitrary, capricious, and otherwise not in accordance with the law under the APA because the Agencies: (1) predetermined to repeal the 2015 Rule and had "unalterably closed mind[s]," Compl. ¶¶ 89-90 (Count One); (2) failed to evaluate the effect of repealing the 2015 Rule on the protection of the nation's waters, *Id*. ¶ 100 (Count Two); (3) failed to justify their decision to repeal the 2015 Rule using support from the administrative record, *Id*. ¶ 106 (Count Three); (4) did not discuss alternatives to repealing the 2015 Rule in its entirety, *Id*. ¶¶ 115-16 (Count Four); (5) failed to demonstrate consistency with the objective of the Act, *Id*. ¶ 130 (Count Seven); and (6) reinstated the pre-2015 regulations contrary to Justice Kennedy's opinion in *Rapanos*, *Id*. ¶¶ 134-35 (Count Eight).

Plaintiffs also allege procedural violations of the APA. Specifically, they argue that the Agencies deprived the public of a meaningful opportunity to comment on: (1) the rationale for the 2019 Rule, *Id*. ¶¶ 121-22 (Count Five); (2) guidance materials referenced in but not published with the proposed rule, *Id*. ¶¶ 124-25 (Count Six); and the economic analysis for the 2019 Rule, *Id*. ¶ 138 (Count Nine).

## STANDARD OF REVIEW

"Federal courts are courts of limited subject matter jurisdiction, and as such there is no presumption that the court has jurisdiction." *Pinkley, Inc. v. City of Frederick*, 191 F.3d 394, 399 (4th Cir. 1999). "[W]hen a federal court concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety." *Arbaugh v. Y & H Corp*., 546 U.S. 500, 514 (2006). On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), Plaintiffs bear the burden of establishing that this Court has subject matter jurisdiction. *Demetres v E.W.*

*Constr., Inc.*, 776 F.3d 271, 272 (4th Cir. 2015); *Miller v. Brown*, 462 F.3d 312, 319 (4th Cir. 2006).

## ARGUMENT

### I.     Plaintiffs Lack Standing to Challenge the 2019 Rule

Constitutional standing under Article III has three elements.  "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citations omitted).  Where, as here, Plaintiffs are not the object of the challenged rule, "standing is not precluded, but it is ordinarily substantially more difficult to establish."  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 562 (1992) (citations and internal quotation marks omitted).

Plaintiffs purport to bring this lawsuit both in their own right and on behalf of their members.  Compl. ¶ 30.  But they have failed to articulate either organizational or representational standing because they have not identified any "concrete, particularized" or "certainly impending" injuries resulting from the repeal of the 2015 Rule or reinstatement of the pre-2015 regulations.  *See Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1147 (2013) (citations and internal quotation marks omitted).  They also have failed to explain how Plaintiffs' and their members' alleged injuries would be redressed if they succeed in obtaining their requested relief, vacatur of the 2019 Rule.  Thus, Plaintiffs lack standing.

### A.     Plaintiffs Lack Representational Standing

To establish standing on behalf of their members, Plaintiffs must show that "[their] members would otherwise have standing to sue in their own right, the interests at stake are germane to the organization[s'] purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit."  *Friends of Earth, Inc. v.*

11

*Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000) (alterations added).  As to whether its members have standing to sue in their own right, Plaintiffs have failed to allege facts sufficient to support "the '[f]irst and foremost' of standing's three elements"—an injury in fact, as well as the third prong of the standing test, redressability.  *Spokeo*, 136 S. Ct. at 1547 (citation omitted) (alteration in original).

### 1.    Injury in Fact

To establish an injury in fact, Plaintiffs' members must have "suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical."  *Id*. at 1548 (citation and internal quotation marks omitted).  The Supreme Court has held that "'threatened injury must be *certainly impending* to constitute injury in fact,' and that '[a]llegations of *possible* future injury' are not sufficient."  *Clapper*, 133 S. Ct. at 1147 (citation omitted) (emphasis and alteration in original).

Here, Plaintiffs assert that their members recreate in or along waters, operate businesses relying on waters, own a home whose value is affected by nearby waters, and/or rely on waters for drinking purposes.  Compl. ¶¶ 19-29.  Plaintiffs claim that these interests will be adversely affected by the repeal of the 2015 Rule—and thus they will suffer injury in fact—in two ways.  First, Plaintiffs claim that the repeal of the 2015 Rule will cause the degradation and destruction of wetlands and other waters upon which their members rely for use and enjoyment, such as Carolina Bays, pocosins, and headwater streams.  *Id*. ¶¶ 31-32.  Second, they argue that the loss of protection for those upstream waters will result in damage to downstream waters in which they have an interest.  *Id*. ¶¶ 33-34.

Recreational, commercial, and consumptive uses of water as well as property values can be legitimate interests.  But Plaintiffs have not articulated any "concrete, particularized" actions

12

that would result in "certainly impending" harm to their alleged interests.  For one thing, they have not pointed to specific waters that are no longer protected as a result of the 2019 Rule—that is, they have failed to identify a single water by name or place that they claim was protected under the 2015 Rule but is not protected under the pre-2015 approach.  In the absence of this, Plaintiffs have no injury in fact.

Plaintiffs' categorical allegations are also insufficient.  The types of waters they reference both very well might not have been protected under the 2015 Rule and might have been (and might still be) be protected under the pre-2015 approach.  Many categories of waters they point to, such as Carolina bays, pocosins, and certain wetlands, were only jurisdictional under the 2015 Rule on a "case-specific basis."  In other words, they may not even have been protected under the 2015 Rule.  80 Fed. Reg. at 37,104-05 (including Carolina bays and pocosins in category of waters that are "waters of the United States . . . where they are determined, on a case-specific basis, to have a significant nexus to" certain jurisdictional waters).  And those same categories of waters could in fact *currently* be protected under the pre-2015 regulatory regime (which also requires a case-by-case analysis for certain waters).  *See, e.g.*, 84 Fed. Reg. at 56,667 (defining "waters of the United States" in part as "[a]ll other waters . . . the use, degradation or destruction of which could affect interstate or foreign commerce").  Since Plaintiffs have not pointed to specific waters that they claim are no longer protected, they have not articulated how the repeal of the 2015 Rule would result in harm to the quality of the waters in which they have actual interests.

Lastly, even if the Court assumes that Plaintiffs could identify specific waters that were protected under the 2015 Rule but are no longer protected under the current federal regulations, Plaintiffs have not pointed to any likelihood of third parties discharging pollutants into such

waters—let alone the required concrete or imminent plans that lead to a "*certainly impending*" threatened injury, *Clapper*, 133 S. Ct. at 1147.  Thus, Plaintiffs' allegations of future harm are merely conjectural and fail to satisfy the injury prong of the standing test.

The district court in another case involving the regulatory definition of "waters of the United States" recently recognized that an organization did not have representational standing to challenge a provision of the 2015 Rule when, among other things, a member had not identified "any project, proposed or existing, that is causing or will soon cause the harms he is concerned about."  *Puget Soundkeeper Alliance v. Wheeler*, No. C15-1342-JCC, 2019 WL 6310562, at *7 n.8 (W.D. Wash. Nov. 25, 2019).  Here, Plaintiffs do not cite to any particular waters that would be left unregulated by repeal of the 2015 rule.  And, as in *Puget Soundkeeper*, Plaintiffs do not point to any current or proposed discharges of pollutants that—even if permitted by a change in the regime—could result in the impairment of their members' water quality interests.  Thus, they have not articulated an injury in fact for representational standing purposes.

### 2.    Redressability

To satisfy the redressability prong of the standing test, a plaintiff must show that "it is 'likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'"  *Doe v. Va. Dep't of State Police*, 713 F.3d 745, 755 (4th Cir. 2013) (citation omitted).

In their Complaint, Plaintiffs ask the Court to "[v]acate and set aside" the 2019 Rule and declare it arbitrary and capricious.  Compl. Prayer for Relief ¶¶ 1-2.  They do not, however, ask the Court to reinstate the 2015 Rule.  Thus, even if they succeed in obtaining their requested relief, it is unclear how a declaratory judgment and vacatur of the 2019 Rule would redress their

alleged injuries.  Even if Plaintiffs do purport to seek reinstatement of the regulations promulgated in the 2015 Rule, the Court could not grant that relief.

Although invalidating a rule generally has the effect of reinstating the prior rule, there are exceptions.  Most relevant to this case, courts decline to reinstate a prior rule that is itself invalid. *Crickon v. Thomas*, 579 F.3d 978, 988 (9th Cir. 2009); *Paulsen v. Daniels*, 413 F.3d 999, 1008 (9th Cir. 2005); *see also Small Refiner Lead Phase-Down Task Force v. EPA*, 705 F.2d 506, 545 (D.C. Cir. 1983) ("In at least some cases, we have no power to reinstate the prior rule . . . .") (citation omitted).  Courts may also choose remand over automatic reinstatement of a prior rule in order to allow the agency to consider the court's opinion in formulating a new rule.  *See, e.g.*, *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 57 & n.21 (1983) (remanding rescission rule to NHTSA for further consideration rather than reinstating prior passive restraint rule); *Small Refiner Lead Phase-Down Task Force*, 705 F.2d at 545 (invalidating a rule governing the lead content of gasoline as too stringent and directing EPA to choose a suitable replacement, rather than reinstating a prior standard that was even more stringent).

Here, because the 2015 Rule was ruled invalid—and expressly enjoined in many of the states where Plaintiffs and their members are located—it should not be reinstated in the event the Court finds any deficiencies with the 2019 Rule.  As explained *supra*, the U.S. District Court for the Southern District of Georgia granted summary judgment in favor of plaintiffs challenging the 2015 Rule and enjoined the 2015 Rule from applying in 11 states, including South Carolina, Alabama, Florida, Georgia, and North Carolina.  *Georgia*, 2019 WL 3949922, at *32.  Each Plaintiff in this case claims to have members with an interest in waters in at least some of those states.  Compl. ¶¶ 30-32.  Many of the Plaintiffs additionally have offices or members who live

15

in such states.  Compl. ¶¶ 19-22, 24, 27-29.  Moreover, three other district courts granted

preliminary injunctions against the 2015 Rule, covering additional states.[2]  *Or. Cattlemen's*

*Ass'n*, No. 3:19-cv-564, Dkt. 58 (D. Or. July 26, 2019); *Texas*, 2018 WL 4518230, at *1; *North*

*Dakota*, 127 F. Supp. 3d at 1060.  And one of those courts, the U.S. District Court for the

Southern District of Texas, later granted summary judgment to the plaintiffs on the grounds that

the 2015 Rule was procedurally invalid.  *Texas*, 389 F. Supp. 3d at 504-06.  Given that courts

have already ruled the 2015 Rule invalid and enjoined its implementation in 27 states, including

the five where Plaintiffs' members claim to have an interest in waters, this Court cannot grant the

relief of reinstating the application of the 2015 Rule.

     Reinstatement of the 2015 Rule also would not be within the Court's equitable powers as

there are less "drastic" remedies available.  *Monsanto Co. v. Geertson Seed Farms*, 561 U.S.

139, 165-66 (2010) (holding that injunctive relief is not warranted "[i]f a less drastic remedy

(such as partial or complete vacatur of [the challenged action]) [i]s sufficient to redress" a

plaintiff's injury).  Even if the Court found deficiencies with the 2019 Rule, under *Monsanto*, the

appropriate remedy would be a partial or full vacatur—not reinstatement of the 2015 Rule.

     Lastly, a replacement rule is currently undergoing interagency review and is expected to

be issued this month.  *See*

https://www.reginfo.gov/public/do/eAgendaViewRule?pubId=201910&RIN=2040-AF75 (last

visited Jan. 16, 2020).  It would be inequitable for the Court to reinstate the prior definition of

"waters of the United States" when the Agencies will soon be issuing a replacement definition.

---

[2] See *supra* note 1 regarding a motion to clarify the scope of a preliminary injunction in New
Mexico.

The facts and claims pled fail to articulate grounds for this Court to issue a sweeping injunction requiring application of the now-repealed 2015 Rule whose provisions were challenged by both commercial and environmental interests, and that two federal district courts ruled was unlawful—including in South Carolina—prior to the administrative action Plaintiffs now challenge.  Accordingly, Plaintiffs have not articulated how vacatur of the 2019 Rule would redress their claimed injuries.

### B.     Plaintiffs Lack Organizational Standing

To establish organizational standing, Plaintiffs must satisfy the three-part *Spokeo* standing test.  Plaintiffs claim that, as a result of the repeal of the 2015 Rule, they will be harmed in three ways: (1) they will "be burdened by legitimate concerns about the future loss of wetlands and streams," Compl. ¶ 32; (2) they will have to advocate for local water quality protections "before a multitude of agencies in jurisdictions across the United States" and that this "will be extremely resource intensive and would divert resources from the groups' other programs and activities," *Id*. ¶ 35; and (3) they were harmed by not having an opportunity to meaningfully comment on the 2019 Rule, *Id*. ¶ 32.  None of these allegations confers a concrete or certainly impending injury in fact.  Moreover, Plaintiffs fail to allege how vacatur of the 2019 Rule would redress their claimed harms.

### 1.     Injury in Fact

First, mere frustration or setback of an organization's goals or purpose is not a cognizable injury.  *Nat'l Taxpayers Union, Inc. v. United States*, 68 F.3d 1428, 1433 (D.C. Cir. 1995).  Thus, neither the fact that Plaintiffs might suffer future organizational concerns about loss of wetlands and streams, Compl. ¶ 32, nor the fact that clean water is "of fundamental importance" to their organizations, *Id*. ¶ 34, is sufficient to confer standing.

17

Second, courts have generally held that an advocacy organization's redirection of resources for advocacy or litigation purposes in response to the action or inaction of another person is insufficient to confer standing on the organization. *See, e.g.*, *Nat'l Ass'n of Home Builders v. EPA*, 667 F.3d 6, 11-12 (D.C. Cir. 2011) (citing multiple cases); *Ass'n for Retarded Citizens v. Dallas Cty. Mental Health & Mental Retardation Ctr. Bd. of Trs.*, 19 F.3d 241, 244 (5th Cir. 1994). After all, an organization does not have a "legally protected interest," *Spokeo*, 136 S. Ct. at 1548, in how to allocate its own resources. Of particular relevance here, courts in litigation *over the scope of Clean Water Act jurisdiction* have held that organizations' expenditures of resources to advocate for their positions in administrative, congressional, and judicial proceedings did not qualify as an injury in fact in litigation. *Nat'l Ass'n of Home Builders v. EPA*, 667 F.3d at 12; *Puget Soundkeeper Alliance*, 2019 WL 6310562, at *7-8.

The extent to which Plaintiffs might ultimately decide to focus or divert their advocacy efforts is also entirely speculative. The majority of Plaintiffs by their own admission are local or regional organizations. Compl. ¶¶ 19, 20, 22, 25, 28, 29. This undermines their assertion that they will engage in advocacy "before a multitude of agencies in jurisdictions across the United States." *Id.* ¶ 35. And, two categories of waters that Plaintiffs claim no longer have protection (Carolina bays and pocosins) are features unique only to this region of the country. 80 Fed. Reg. at 37,072. Even as to Plaintiffs with a national mission, it is speculative whether they will in fact need or choose to engage in advocacy nationwide. Indeed, Plaintiffs' argument presumes that state or local governments do not already regulate the waters in question or will not act on their own to address any gaps in protection of waters following the 2019 Rule. Moreover, as noted above, many categories of waters were only jurisdictional under the 2015 Rule on a "case-specific basis" and could be protected under the pre-2015 regulations that were reinstated by the

2019 Rule, also on a case-by-case basis.  80 Fed. Reg. at 37,104-05; 84 Fed. Reg. at 56,667.

Since Plaintiffs have not identified specific waters that they claim are no longer protected (let

alone any plans to discharge pollutants into those waters), it is not even clear that the waters

would require Plaintiffs' advocacy.  Thus, Plaintiffs have not alleged a concrete, imminent injury

resulting from reallocation of resources.

Third, because Plaintiffs have not identified a concrete, imminent invasion of a legally

protected interest, they cannot rely on the alleged procedural deficiencies in the promulgation of

the 2019 Rule to confer standing.  *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009)

("[D]eprivation of a procedural right without some concrete interest that is affected by the

deprivation—a procedural right *in vacuo*—is insufficient to create Article III standing."); *Puget*

*Soundkeeper Alliance*, 2019 WL 6310562, at *8 ("[B]ecause Plaintiffs have failed to identify an

injury in fact attributable to [the challenged provision of the 2015 Rule], Plaintiffs may not

premise their organizational standing on the alleged procedural defects in the Agencies'

promulgation of [that provision].") (citing *Summers*, 555 U.S. at 496).

### 2.    Redressability

For the same reasons that Plaintiffs have failed to articulate how a favorable ruling would

redress their members' alleged injuries, Plaintiffs have not explained how the Court could

redress their alleged organizational injuries.  *See supra* Part I.A.2.

Because Plaintiffs have not pled an injury in fact or redressability, this case should be

dismissed for lack of standing.

## II.    This Case Is Not Ripe

Ripeness is "designed 'to prevent the courts, through avoidance of premature

adjudication, from entangling themselves in abstract disagreements over administrative policies,

and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.'" *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 807-08 (2003) (citation omitted). Both the limits of Article III of the Constitution and prudential reasons for a court's refusal to exercise jurisdiction underpin the doctrine of ripeness. *Sansotta v. Town of Nags Head*, 724 F.3d 533, 545 (4th Cir. 2013).

To determine whether administrative actions are ripe for judicial review, courts must "balance the fitness of the issues for judicial decision with the hardship to the parties of withholding court consideration." *Doe*, 713 F.3d at 758 (internal quotation marks and citation omitted). "A claim is not ripe for adjudication if it rests upon contingent future events that may not occur . . . at all." *Scoggins v. Lee's Crossing Homeowners Ass'n*, 718 F.3d 262, 270 (4th Cir. 2013) (internal quotation marks and citation omitted). Where, as here, there is no statutory provision providing for immediate judicial review, *see National Association of Manufacturers*, 138 S. Ct. at 624, a challenge to a regulation under the APA is ordinarily not ripe "until the scope of the controversy has been reduced to more manageable proportions, and its factual components fleshed out, by some concrete action applying the regulation to the claimant's situation in a fashion that harms or threatens to harm him." *Nat'l Park Hosp. Ass'n*, 538 U.S. at 808 (citation and internal quotation marks omitted). A case may also be unripe if "judicial intervention would inappropriately interfere with further administrative action." *Ohio Forestry Ass'n v. Sierra Club*, 523 U.S. 726, 733 (1998).

Here, the case is not ripe for both constitutional and prudential reasons. As noted above, Plaintiffs have not identified any "concrete action" (e.g., a planned project that could impair the quality of a water that will no longer be protected and in which Plaintiffs have an interest)

threatening their interest in specific waters.  *See supra* Part I.A.  Thus, their challenge is not ripe

for the same reasons they lack standing.  Moreover, deferring judicial review until a concrete

action occurs would not cause hardship to Plaintiffs because they have not identified an

immediate threat or a burden imposed upon them.  *See Lansdowne on the Potomac Homeowners*

*Ass'n v. OpenBand at Lansdowne, LLC,* 713 F.3d 187, 199 (4th Cir. 2013) (citation omitted)

("The hardship prong is measured by the immediacy of the threat and the burden imposed on the

[plaintiff].").

The Court would also benefit from further factual development on specific instances of

threatened injury, even though this is an APA challenge in which the Court's review of the

merits must be based on the Agencies' administrative record.  Not only have Plaintiffs failed to

identify a concrete action, but also they have not identified any instance where the Agencies have

applied the pre-2015 approach to find that a water of interest was *not* jurisdictional.  Indeed, in

the event that Plaintiffs believe they are harmed by a negative jurisdictional determination they

received under the 2019 Rule, they could potentially challenge such a negative jurisdictional

determination pursuant to *U.S. Army Corps of Engineers v. Hawkes Co., Inc.*, 136 S. Ct. 1807

(2016).  A court presiding over that challenge would have the benefit of an administrative record

that allows for the determination of the actual impact of the 2019 Rule in a real situation, not just

in a facial review devoid of context, as Plaintiffs appear to seek here.  *See, e.g.*, *Ohio Forestry*

*Ass'n*, 523 U.S. at 733 (finding challenge to U.S. Forest Service land management plan unripe

where the plaintiff would have an opportunity to comment on and challenge any specific logging

permit issued under the plan in the future).

Moreover, because the Agencies' rulemaking on a revised definition will soon be

concluded and will replace the prior regulatory regimes, the Court should follow the principles of

prudential ripeness and defer review until the new action is completed. *See Wyoming v. Zinke*, 871 F.3d 1133, 1142 (10th Cir. 2017) (finding challenge to Bureau of Land Management regulation "unfit for review" when the Bureau planned to rescind the regulation). It would not be in the interest of judicial efficiency for the Court to address the merits of Plaintiffs' claims concerning the 2019 Rule when the Agencies are finalizing a replacement rule.

Deferring judicial review of this action is particularly appropriate given the complex litigation and administrative history of the Agencies' efforts to formulate a regulation defining the "waters of the United States" under the Clean Water Act. Plaintiffs ask the Court to vacate the 2019 Rule. But even if such relief were appropriate, what would the operative definition become? Prior to the Agencies' action challenged here, various provisions of the 2015 Rule were attacked by both commercial and environmental interests. Two district courts granted summary judgment to plaintiffs challenging the 2015 Rule. Those courts concluded that the 2015 Rule was substantively and/or procedurally invalid. The Agencies respectfully submit that the conflicting, overlapping proceedings of district courts around the country regarding moving targets are a poor investment of judicial and agency resources. Instead, the Court should not intervene at this time when the Agencies are close to the conclusion of their administrative proceeding.

Thus, the case should be dismissed as unripe.

## III.    In the Alternative, the Case Should Be Held in Abeyance

In the alternative, this case should be held in abeyance. *See, e.g.*, *Am. Petroleum Inst. v. EPA*, 683 F.3d 382, 389 (D.C. Cir. 2012) (holding case in abeyance "pending resolution of the proposed rulemaking" that, if finalized, could resolve an issue in the case). For the same reasons this case is prudentially unripe, the Court should defer reaching the merits of a rule that is soon

to be replaced.  When the replacement rule is issued, the parties can evaluate whether the rule resolves issues in this case and advise the Court accordingly.

### CONCLUSION

For the foregoing reasons, the Court should dismiss this case for lack of subject matter jurisdiction or, in the alternative, hold it in abeyance.

Respectfully submitted,

Dated: January 17, 2020

A. LANCE CRICK
   Acting United States Attorney
   District of South Carolina

/s/ Lee E. Berlinsky
LEE E. BERLINSKY (Fed. ID# 05443)
   Assistant United States Attorney
   Liberty Center Building
   151 Meeting Street, Suite 200
   Charleston, SC 29402
   (843) 266-1679
   Lee.Berlinsky@usdoj.gov

*Counsel for Federal Defendants*